**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

DWENDE REID, #31447-039,

       Petitioner,

v.                                        ACTION NO.
                                        2:05cv666

VANESSA P. ADAMS, Warden,

       Respondent.

**UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

       This matter was initiated by petition for writ of habeas corpus under 28 U.S.C. §2241. The matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. The Court recommends denying petitioner's petition for writ of habeas corpus.

**I. STATEMENT OF THE CASE**

**A. Background**

       Petitioner Dwende Reid ("Reid") was convicted in the United States District Court for the Eastern District of Michigan at Detroit of conspiracy to distribute marijuana and was sentenced to a term of 57 months imprisonment.

       Reid, presently in the custody of the Federal Bureau of Prisons at the Federal Correctional Center in Petersburg, Virginia, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on November 14, 2005. Reid challenges sanctions imposed upon him as a result of a

disciplinary hearing held on May 25, 2005, at the Federal Correctional Institution, Morgantown, West Virginia ("FCI Morgantown"). He seeks expungement of his record and the restoration of 80 days of good conduct time. On January 23, 2006, respondent filed a Motion to Dismiss, or in the alternative, for Summary Judgment [ Doc. No. 4] with a memorandum in support ("Respondent's Memo"). Reid filed "Petitioner's Reply to Government's Motion to Dismiss" on February 15, 2006. Respondent filed "Respondent's Reply to 'Petitioner's Reply to Government's Motion to Dismiss'" on February 21, 2006. On March 3, 2006, Reid filed "Petitioner's Rebuttal to Respondent's Reply to Petitioner's Reply to Motion to Dismiss."

On March 7, 2006, Respondent filed "Respondent's Motion to Strike 'Petitioner's Rebuttal to Respondent's Reply to Petitioner's Reply to Motion to Dismiss'" [Doc. No. 10] with a memorandum in support. The motion to strike is DENIED. Finally, on March 14, 2006, Reid filed "Petitioner's Opposition to Respondent's Motion to Dismiss."

### B. Grounds Alleged

Reid asserts he is entitled to relief under 28 U.S.C. § 2241, because the Federal Bureau of Prisons unlawfully revoked his good conduct time.

### II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Petitioner is a federal inmate currently incarcerated at FCI Petersburg serving a total term of 57 months for violating 21 U.S.C. §§ 841(a)(1) and 846, Conspiracy to Possess with Intent to Distribute Marijuana and Distribution of Marijuana. See Respondent's Memo Ex. A. Following his sentencing in the Eastern District of Michigan, Reid was originally housed in FCI Morgantown, West Virginia.

On April 6, 2005, staff members at FCI Morgantown identified a large black garbage bag that

had been dropped off near the baseball field behind the training center at the institution, just off Greenbag Road. See Respondent's Memo Ex. B, Attachment 1. The garbage bag contained several items considered contraband (not authorized in any federal institution), including: one cell phone; a cellphone charger; four pairs of cell phone ear plugs with microphones; bags of Nitro Tech powder and Cell Tech powder, totaling eight pounds each; 240 growth promoter and vasodilator capsules; 120 capsules of Fat loss formula Caso XP; 650 tablets of No. 2 Hemodilator; 601 capsules of Hydroxy Cut; 2 pairs of tennis shoes; 3 boxes of over-the-counter cold medicine; Theraflu severe cold medication; and, a pornographic magazine. See Respondent's Memo Ex. B, Attachment 1. The bag also contained receipts from Vitamin World in Livonia, Michigan and Rite Aid in Detroit, Michigan, which matched some of the items found in the bag. The receipts had a membership number for purchase, which was traced and found to be registered to Altovese Hill of Inkster, Michigan. A search of the inmate visiting records indicated only one inmate, Reid, had Ms. Hill on his visiting list.

The investigation of the incident was completed on May 23, 2005, and on the same day, Reid was provided with a copy of the incident report which concluded Reid planned and attempted to introduce the contraband. See Respondent's Memo Ex. B ¶ 7, Attachment 1. Reid was placed in the Special Housing Unit ("SHU") at approximately 12:39 p.m. on that date. See Respondent's Memo Ex. A.

On May 24, 2005, Reid appeared before the Unit Discipline Committee ("UDC") on the charges. A UDC consists of one or more staff members with the authority to hold an initial hearing upon completion of an investigation concerning alleged charges of inmate misconduct. See 28 C.F.R. § 541.2(b) (2002). Without making a finding, the UDC referred the incident report to the DHO for

further hearing and final disposition. The DHO is an independent hearing officer who is responsible for conducting discipline hearings and who imposes sanctions for incidents of inmate misconduct referred for disposition by the UDC. See 28 C.F.R. § 541.2(c) (2002). The UDC informed Reid in writing of his rights before the DHO. See Respondent's Memo Ex. B, Attachment 1. Reid chose Counselor Turner as his staff representative, but indicated he planned to call no witnesses. Id.

A DHO hearing was held at FCI Morgantown on May 25, 2005, at which time Reid appeared with his staff representative. See Respondent's Memo Ex. B ¶ 11 and Attachment 1. Reid denied any role in the introduction of contraband or the use of a cellular phone, and stated he had not seen Ms. Hill since January. See Respondent's Memo Ex. B ¶ 12. The DHO relied upon the May 23, 2005, Incident Report and found the coincidence of the evidence compelling, noting the receipts indicated the contraband was purchased by Ms. Hill, and the only connection between Ms. Hill and FCI Morgantown was Reid. See Respondent's Memo Ex. B, Attachment 1. The DHO found based upon the greater weight of the evidence presented, despite Reid's denial, that Reid committed the prohibited acts charged in the Incident Report. Id. He also found under Charge 108A that a cellular phone is a "hazardous tool" which could be used to effect an escape or to coordinate the introduction of illegal substances into a facility. Id.

On Charge 108A, the DHO sanctioned Reid to 30 days of disciplinary segregation, which was suspended pending 180 days of clear conduct; 12 months of telephone restriction; and, disallowed 40 days of good conduct time. See Respondent's Memo Ex. B, Attachment 1. On Charge 197A, the DHO sanctioned Reid to 180 days social visiting restriction, recommended disciplinary transfer, and disallowed 40 days of good conduct time. Id. The DHO report was delivered to Reid on June 15, 2005, and advised Reid of his right to appeal the decision. On June 27, 2005, Reid appealed the

DHO decision to the Mid-Atlantic Regional Office. See Respondent's Memo Ex. A. The appeal was rejected on June 28, 2005, because he submitted more than one letter-size continuation page, and he was advised that he could resubmit the appeal in proper form within ten days of the date of the rejection notice. Id. On July 15, 2005, Reid was transferred to the Federal Transfer Center at Oklahoma City and subsequently arrived at FCI Petersburg on August 19, 2005. See Respondent's Memo Ex. A.

Reid resubmitted the appeal to the Regional Office on July 20, 2005, and it was rejected as untimely. Id. On August 9, 2005, Reid again submitted the appeal to the Regional officer and it was again rejected as untimely. Id. He appealed the Regional Office's rejection to the Central Office on September 13, 2005, and the Central Office upheld the Regional Office's rejection. Id. On September 26, 2005, Reid again appealed the DHO action to the Regional Office and the Regional Officer rejected the appeal as untimely. See Respondent's Memo Ex. A.

### A. Exhaustion

Respondent argues Reid's petition should be dismissed due to Reid's failure to exhaust administrative remedies. Reid timely filed an appeal of the DHO decision, however, his appeal was rejected on June 28, 2005, because he submitted more than one letter-size continuation page. He was given ten days to resubmit his appeal, and did not do so. Reid argues he did not have envelopes or stamps to file his appeal timely. He also argues he was in the "hole," special housing unit, without the ability to gain the supplies he needed to file his appeal. See Petitioner's Rebuttal to Respondent's Reply to Petitioner's Reply to Motion to Dismiss p. 2. In any event, he was transferred on July 15, 2005, to the Federal Transfer Center in Oklahoma City, and resubmitted his appeal on July 20, 2005. The appeal was rejected as untimely. Reid attempted to file an appeal on two more occasions, and

5

both appeals were rejected as untimely.

Under these circumstances, the Court will not dismiss Reid's appeal for failure to exhaust administrative remedies, but will address the merits of his petition.

### B. Merits

Reid asserts his due process rights were violated when he lost 80 days good conduct credit as a result of sanctions imposed following a disciplinary hearing. In Wolff v. McDonnell, 418 U.S. 539 (1974), the Supreme Court held due process requires procedural protections before a prison inmate can be deprived of a protected liberty interest in good time credits. These procedural protections include: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. 418 U.S. at 563-567. Reid does not assert any of these due process requirements were not met. A review of the Appendix attached to Reid's petition shows the requirements were met. A written incident report was prepared and delivered to Reid on May 23, 2005. See Appendix to Petition p. 1. A written report of the disciplinary hearing summarizes the evidence given at the hearing, states Reid requested no witnesses to testify in his behalf, and explains the reasons for the sanctions imposed. Id. pp. 2-5. The second page of the incident report, which was not attached to Reid's petition, shows Reid declined to identify any witnesses prior to the hearing. See Respondent's Memo Ex. B, Attachment 1, p. 6.

Reid asserts his due process rights were violated when the prison officials did not provide him with an incident report within 24 hours of the incident. See Petition p. 3; Petitioner's Reply to Government's Motion to Dismiss p. 2. He cites a provision in the Code of Federal Regulations:

> Staff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident.

28 C.F.R. § 541.15(a) (2002). Reid explains the incident allegedly occurred on April 6, 2005, and an incident report was not delivered to him until May 23, 2005. He argues this delay in providing him with the incident report violated his due process rights. First, Reid does not have a constitutional right to a written copy of the charges against him within 24 hours of staff becoming aware of his involvement. Secondly, the documents show an investigation was performed, an incident report was prepared on May 23, 2005, and Reid was provided a copy of the incident report on the same day. See Petition Ex. 1.

Next, Reid argues his due process rights were violated when the staff representative failed to advise him that Ms. Hill could be called as a witness in his defense. See Petitioner's Reply to Government's Motion to Dismiss p. 2. The documents show Reid was advised of his right to identify witnesses to testify at his hearing, and he declined to do so. See Respondent's Memo Ex. B, Attachment 1, p. 6.

The Supreme Court further held in Superintendent, Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445 (1985), that prior to revoking a prison inmate's good time credits, the prison disciplinary board must comport with "the minimum requirements of procedural due process," meaning there must be "some evidence" in the record to support its findings. This standard does not require an examination of the entire record, or a reweighing of the credibility of witnesses and other evidence. Id.; see also Baker v. Lyles, 904 F.2d 925, 933 (4th Cir. 1990) (holding a record of a prison disciplinary hearing need not establish the reliability of a confidential informant to meet the "some

evidence" standard). Reid argues the "some evidence" standard was not met in his case, because the receipt found in the bag was for nutritional supplements, not a cellular telephone. Further, he argues there is no evidence to support the finding by the DHO that a cellular telephone is a "hazardous tool." See Petition p. 4-5; Petitioner's Reply to Government's Motion to Dismiss p. 3-5.

A review of the hearing decision reveals that while the cellular telephone was not included on the receipt, it was found in the bag along with the receipt tracked to Ms. Hill. Therefore, there is "some evidence" to link the cellular phone to Ms. Hill, who in turn was a visitor of Reid. Further, the hearing officer explained his reasons for finding the cellular telephone is a "hazardous tool." He stated,

> [a] cellular telephone is extremely useful in effecting an escape or other absence from an open institution or coordinating the introduction into the facility of illegal substances, i.e., drugs. Cellular telephones, used in concert, could be used to coordinate inmate criminal, sexual or other violent acts within the institution. Therefore, the DHO finds a cellular telephone is a hazardous tool.

See Respondent's Memo Ex. B Attachment 1 p. 3. The DHO has adequately explained his reasons for finding the cellular telephone is a hazardous tool.

Reid has not shows that his due process rights were violated. Therefore, Reid is not entitled to the relief he seeks, and his petition should be denied.

### III. **RECOMMENDATION**

For the foregoing reasons, the Court recommends that Reid's petition for writ of habeas corpus be DENIED and the respondent's motion to dismiss should be GRANTED.

Reid has failed to demonstrate "a substantial showing of the denial of a constitutional right," therefore, it is recommended that the Court decline to issue any certificate of appealability pursuant

to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322 (2003).

### IV. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within ten (10) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Tommy E. Miller
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

July 12, 2006

**CLERK'S MAILING CERTIFICATE**

A copy of the foregoing Report and Recommendation was mailed this date to the following:

Dwende Reid, #31447-039
FCI Petersburg
P.O. Box 1000
Petersburg, VA 23804


Joel E. Wilson, Esq.
United States Attorney's Office
101 W. Main St.
Suite 8000
Norfolk, VA 23510

                                          Fernando Galindo, Acting Clerk


                                  By _____
                                          Deputy Clerk

                                          July    , 2006